1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8   Raul James Walsh,                    )    No.  CV-22-01123-PHX-SPL
                                         )
9                                        )
                    Plaintiff,           )
10                                       )    **ORDER**
    vs.                                  )
11                                       )
                                         )
12  J.B. Hunt Transport Incorporated, et )
    al.,                                 )
13                                       )
                                         )
                    Defendants.          )
14  _____ )

15         Before the Court is Defendants J.B. Hunt Transport, Inc., Karen Adams, and John

16  Doe Adams' (collectively, "Defendants") Motion to Dismiss. (Doc. 7). Defendants move

17  to dismiss Plaintiff Raul James Walsh's ("Plaintiff") First Amended Complaint (the

18  "Complaint") with prejudice.[1] The Motion has been fully briefed and is ready for review.

19  (Docs. 7, 8, 10). For the following reasons, the Court grants Defendants' Motion.[2]

20         [1] A clean copy of Plaintiff's First Amended Complaint was never filed on the
21  docket. Rather, the only copy of the First Amended Complaint on the docket is a redlined
    version attached to Plaintiff's "Notice of Filing Amended Complaint." (*See* Doc. 6 & 6-1).
22  The parties nonetheless refer to this redlined version as the operative complaint in their
23  briefing of Defendants' Motion to Dismiss. The Court will do the same, particularly
    because this Order dismisses the First Amended Complaint anyway and grants Plaintiff
24  leave to file a *Second* Amended Complaint.

25         Thus, for purposes of this Order, the Court treats Docket Number 6-1—which is a
    redlined version of Plaintiff's First Amended Complaint—as the operative complaint.
26

27         [2] Because it would not assist in resolution of the instant issues, the Court finds the
    pending motions are suitable for decision without oral argument. See LRCiv. 7.2(f); Fed.
28  R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     <u>BACKGROUND</u>

Plaintiff, a Hispanic male who was employed by Defendant J.B. Hunt Transport, Inc. ("J.B. Hunt"), alleges that he was subjected to unlawful employment practices, including discrimination, harassment, and a hostile work environment. Plaintiff worked for J.B. Hunt as "Transportation Manager II" for approximately 14 years. (Doc. 6-1 at 4). Plaintiff's first allegation of discrimination occurred on August 26, 2019, when he alleges that he was "unreasonably reprimanded for speaking up" at a corporate training event. (*Id.*). Plaintiff alleges that he later applied for a promotion, but that Defendant Karen Adams ("Adams")—who was "a white female hired after Plaintiff"—was promoted over him. (*Id.* at 5). Adams became Plaintiff's immediate supervisor. (*Id.*). In September 2020, Plaintiff alleges that Adams began harassing Plaintiff with mocking comments and general mistreatment. (*Id.* at 5–6). Plaintiff alleges that on November 29, 2020, Plaintiff was hospitalized and requested time off work. (*Id.* at 6). After Adams was notified, Plaintiff alleges that she harassed him by "refus[ing] to accept [his] absence" and "show[ing] up to his house, [with her husband,] uninvited and unannounced outside normal work hours." (*Id.*). Plaintiff alleges that the visit was an attempt to "catch him in a lie." (*Id.*). Plaintiff reported Adams to Human Resources but alleges that no action was taken. (*Id.* at 6–7).

Plaintiff further alleges that, during the COVID-19 pandemic, Adams relocated Plaintiff from his office to a workspace in the lobby, "purposefully position[ing] his desk in the path of incoming staff and visitors to make [his] workday insufferable." (*Id.* at 7). Plaintiff alleges that because of his relocation at Adams' direction, his work was "consistently interrupted," his privacy was "revoked," and he was "left vulnerable to a rapidly spreading infectious disease." (*Id.*). No other employee was subjected to such treatment. (*Id.* at 8). Moreover, according to Plaintiff, Adams refused to enforce any COVID-19 policy and locked company-provided masks in a storage closet, denying Plaintiff access. (*Id.* at 7). In December 2020, Plaintiff alleges that he tested positive for COVID-19. (*Id.* at 8). Plaintiff alleges that he recovered enough to return to work but continued to suffer from long-term COVID symptoms. (*Id.*). Despite this, Plaintiff alleges

1   that Defendants "refused to allow him work-from-home accommodations" or otherwise

2   work with Plaintiff to find a "workable resolution" during his recovery. (*Id.*). Plaintiff

3   alleges that this resulted in him losing over 56 hours of PTO. (*Id.*).

4          At some point after that, Plaintiff again raised his concerns with Human Resources.

5   Plaintiff alleges that he began receiving periodic "performance write-ups," which Plaintiff

6   contends was a form of retaliation for him "retaining legal counsel and sending a letter

7   demanding that Defendant cease its discriminatory actions and treatment." (*Id.*). On

8   December 17, 2021, Plaintiff received a performance write-up that was prepared by Adams

9   and outlined "concerns with his performance and behavior." (*Id.* at 9). Plaintiff alleges that

10  he disagreed with the write-up's content, refused to sign it, and was "abruptly" informed

11  by Adams that his employment with J.B. Hunt had been terminated. (*Id.*).

12         On April 25, 2022,[3] Plaintiff filed a Charge of Discrimination (the "Charge") with

13  the Equal Employment Opportunity Commission ("EEOC"). (Doc. 7-1 at 2–4). On

14  May 19, 2022, the EEOC issued a Notice of Right to Sue. (Doc. 6-1 at 3). On July 5, 2022,

15  Plaintiff filed this action. The Complaint contains four causes of action against Defendants:

16  (1) Title VII racial discrimination against J.B. Hunt; (2) Title VII harassment against

17  Defendants Karen and her husband, John Doe Adams; (3) Title VII hostile work

18  environment against J.B. Hunt; and (4) disability discrimination in violation of the

19  Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), against J.B. Hunt. On

20  September 14, 2022, Defendants filed the instant Motion to Dismiss, pursuant to Federal

21  Rule of Civil Procedure 12(b)(6). (Doc. 7). On September 28, 2022, Plaintiff filed a

22  Response. (Doc. 8). On October 5, 2022, Defendants filed a Reply, and the Motion became

23  ripe for this Court's review. (Doc. 10).

24  ///

25  ///

26

27         [3] As Defendants point out, (*see* Doc. 7 at 2, n.1), the Complaint incorrectly identifies
    April 26, 2022 as the date upon which Plaintiff filed the Charge. (Doc. 6-1 at 3). The
28  Charge indicates that it was filed on April 25, 2022. (Doc. 7-1 at 2–4).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.      LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft*, 556 U.S. at 678. Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

## III.     DISCUSSION

Defendants argue that Plaintiff's Title VII race discrimination claim against J.B. Hunt should be dismissed because Plaintiff failed to exhaust his administrative remedies by filing the Charge within 300 days of the alleged conduct. (Doc. 7 at 4). As to Plaintiff's ADA claim against J.B. Hunt, Defendants argue that dismissal is appropriate because he never filed any administrative charge alleging disability discrimination in the first place. (*Id.* at 5–6). Even if the Charge could be read to include disability-related allegations, Defendants argue that the claim would be time-barred because he failed to file the Charge within 300 days of the alleged incidents of disability discrimination. (*Id.*).

Defendants additionally argue that all four of Plaintiff's claims must be dismissed for failure to state a claim. Specifically, Defendants argue that Plaintiff failed to allege claims for Title VII race discrimination, Title VII hostile work environment, or ADA disability discrimination. (*Id.* at 6–12). As to Plaintiff's Title VII harassment claim against Defendants Karen and John Doe Adams, Defendants argue that Plaintiff cannot maintain such a claim against them in their individual capacities. (*Id.* at 12–13).

**A. Title VII Race Discrimination Claim Against J.B. Hunt (Count I)**

Defendants argue that Plaintiff's Title VII race discrimination claim must be dismissed because Plaintiff failed to exhaust his administrative remedies by filing the Charge within 300 days of the alleged acts. (*Id.* at 4). Alternatively, Defendants argue that Plaintiff failed to plead sufficient facts to state the claim. (*Id.* at 6–8).

To bring a Title VII or ADA[4] claim in district court, a plaintiff must first exhaust his administrative remedies. *Sommatino v. United States*, 255 F.3d 704, 707–08 (9th Cir. 2001) (citing 42 U.S.C. § 2000e-16(c)). To do so, a plaintiff must file administrative charges "within the statutory time period and serve notice upon the person against whom the charge is made." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (citing § 2000e-5(e)(1)). "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days." *Id.* "A claim is time barred if it is not filed within these time limits." *Id.* With respect to *discrete* retaliatory or discriminatory acts—"such as termination, failure to promote, denial of transfer, or refusal to hire"—the Supreme Court has held that the act is deemed to have "occurred" on the day that it "happened." *Id.* at 110, 114. "A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Id.* at 110. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113.

///

---

[4] Title I of the ADA incorporates the procedural requirements of Title VII, including the time limits for filing an administrative charge with the relevant agency. *See* 42 U.S.C. § 12117(a) ("The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides . . . to any person alleging discrimination on the basis of disability."); *Zimmerman v. Or. Dep't of Just.*, 170 F.3d 1169, 1177–78 (9th Cir. 1999).

1      Here, the parties do not dispute that the 300-day time limit applied.[5] Plaintiff filed

2   the Charge with the EEOC on April 25, 2022. (Doc. 7-1 at 2–4). Thus, any discrete

3   discriminatory acts that are alleged to have occurred *prior to* June 29, 2021 are not

4   actionable. Specifically, Plaintiff's Complaint and Charge allege an incident from August

5   26, 2019 in which Plaintiff was "unreasonably reprimanded for speaking up" at a corporate

6   training event. (Doc. 6-1 at 4; Doc. 7-1 at 2). Plaintiff alleges that he was later denied for

7   a promotion and that Defendant Adams—"a white female hired after Plaintiff"—was

8   promoted instead. (Doc. 6-1 at 5; Doc. 7-1 at 2). Plaintiff alleges that, on September 18,

9   2020, Defendant Adams "mocked" him and that, on September 23, 2020, Defendant

10  Adams "yelled at [him] in front of his entire office." (*Id.*). Plaintiff also alleges an incident

11  on November 29, 2020 in which Defendant Adams showed up at his house, "uninvited and

12  unannounced," attempting to "catch him in a lie" with respect to him requesting time off

13  work. (Doc. 6-1 at 6–7; Doc. 7-1 at 3). Plaintiff also includes allegations from December

14  2020, when Defendant Adams relocated his desk to the lobby, causing disruptions to his

15  work and exposing him to COVID-19. (Doc. 6-1 at 7; Doc. 7-1 at 3). Plaintiff alleges that

16  he tested positive for COVID-19 that same month and that J.B. Hunt "refused to allow him

17  work-from-home accommodations or work with [him] on a workable resolution during his

18  recovery resulting in over 56 hours of PTO lost at Plaintiff's expense." (Doc. 6-1 at 8;

19  Doc. 7-1 at 3). Plaintiff alleges that Defendants retaliated against him by issuing periodic

20  "performance write-ups" at some point thereafter, though the exact date upon which these

21  write-ups began is not clear. (Doc. 6-1 at 8). Finally, Plaintiff alleges that, on March 12,

22

23      [5] The Court notes that it is not clear from the Complaint or anywhere else on the
24  docket that Plaintiff initially filed a grievance with a state agency such that the 300-day
    time limit was triggered. *See* 42 U.S.C. § 2000e-5(e)(1) (providing that 180-day time limit
25  applies unless the person aggrieved initially instituted proceedings with State or local
    agency). Rather, the Complaint mentions only that Plaintiff filed a charge of discrimination
26  with the EEOC. (*See* Doc. 6-1 at 3). Given that Defendants appear to concede the issue,
    however, the Court will proceed under the assumption that the 300-day time limit applied.
27  (*See* Doc. 7 at 3 ("This deadline is extended to 300 days . . . if the plaintiff files the charge
28  with a state or local agency[,] . . . as is the case here.")).

2021, he received a negative annual performance review from Defendant Adams. (Doc. 7-1 at 3). *None* of these alleged acts give rise to actionable conduct, as all of them occurred more than 300 days prior to the Charge.[6]

In his Response, Plaintiff points to three discriminatory acts which he alleges occurred *within* the 300-day window. (Doc. 8 at 5). The first two acts were performance write-ups he received on November 4, 2021 and December 10, 2021. (*Id.*). Plaintiff alleges that these were "retaliatory in nature and part of the pattern of Defendant's discriminatory actions." (*Id.*). However, neither of these performance write-ups are alleged in Plaintiff's Complaint or in the Charge to the EEOC. The Complaint alleges that Plaintiff received periodic "performance write-ups," but does not mention any dates and implies that they began around December 2020, "[s]hortly after Plaintiff raised concerns to Defendant's Human Resources department about the discriminatory and harassing behavior suffered at the hands of Adams." (Doc. 6-1 at 8). Even if the Court were to read this allegation to *include* the November 4, 2021 and December 10, 2021 write-ups, this does nothing to resolve the fact that Plaintiff's Charge to the EEOC fails to mention *any* periodic performance write-ups. (*See generally* Doc. 7-1 at 2–4). Rather, the Charge only alleges the March 12, 2021 annual review. (*Id.* at 3).

The third act alleged in Plaintiff's Response was his December 17, 2021 termination of employment, which he also alleges was "retaliatory in nature and part of the pattern of Defendant's discriminatory actions against Plaintiff on the basis of race." (Doc. 8 at 5). Plaintiff's Complaint *does* allege the retaliatory termination. (*See* Doc. 6-1 at 9). However, his December 2021 termination is not mentioned *anywhere* in the Charge with the EEOC. (*See generally* Doc. 7-1 at 2–4). In sum, *none* of the three discriminatory acts pointed to

---

[6] Although these alleged acts are time-barred and not actionable, the Supreme Court has recognized that they may still be used "as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113; *see also Lyons v. England*, 307 F.3d 1092, 1109–12 (9th Cir. 2002) (discussing, "[i]n the wake of *Morgan*, . . . how courts should determine what particular evidence of time-barred acts may be taken into account as 'background' evidence of present, actionable discrimination").

by Plaintiff's Response can be found in the Charge and only *one* of them—the termination—is explicitly mentioned in the Complaint.

"Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'" *Green v. L.A. Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989) (quoting *Brown v. Puget Sound Elec. Apprenticeship & Training Tr.*, 732 F.2d 726, 729 (9th Cir. 1984)). "In determining whether an allegation under Title VII is like or reasonably related to allegations contained in a previous EEOC charge, the court inquires whether the original EEOC investigation would have encompassed the additional charges." *Id.* (citations omitted); *see also E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)) ("The district court had subject matter jurisdiction over Estrada's allegations of discriminatory layoff if that claim fell within the scope of the EEOC's *actual* investigation or an 'EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.'"). "Courts evaluating the similarity between an administrative complaint and a Title VII claim 'may consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.'" *Pringle v. Wheeler*, 478 F. Supp. 3d 899, 908 (N.D. Cal. 2020) (quoting *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 644 (9th Cir. 2003)).

Given that Plaintiff failed to allege the November and December 2021 performance write-ups or his December 2021 termination in the Charge, the Court will likely have to—at some point—determine whether such allegations are "like or reasonably related to the allegations" that Plaintiff *did* include in the Charge. *See Green*, 883 F.2d at 1475–76. If so, the November and December 2021 allegations may be considered by the Court in this action despite them not being included in the Charge. If not, however, Plaintiff's Title VII race discrimination claim against J.B. Hunt is unlikely to survive because Plaintiff will have failed to allege any actionable conduct for which he (i) exhausted his administrative

8

1   remedies and (ii) properly pleaded in his Complaint. Although the Court could conduct

2   such an analysis at this time with respect to Plaintiff's December 2021 termination, it could

3   *not* do so with respect to the November and December 2021 performance write-ups because

4   Plaintiff failed to even allege these acts in the Complaint. Given that these performance

5   write-ups are central to Plaintiff's case—indeed, they constitute the very conduct giving

6   rise to Plaintiff's claims—the Court finds that it would be more appropriate and efficient

7   to dismiss Plaintiff's Title VII race discrimination claim without prejudice and grant

8   Plaintiff leave to amend. Plaintiff is advised that his Title VII race discrimination claim

9   against J.B. Hunt *cannot* be based on time-barred conduct. This includes Plaintiff's

10  allegations related to the August 2019 corporate training session, Defendant Adams'

11  unannounced visit to Plaintiff's house in November 2020, Plaintiff's recovery from

12  COVID-19 in December 2020, or *any other allegations that occurred prior to June 29,*

13  *2021*. As noted above—*see supra* n.4—such allegations may still be included in the

14  Complaint to the extent they serve as "background evidence" in support of a timely claim

15  for *actionable* discrimination.

16          **B. Title VII Harassment Claim Against Individual Defendants (Count II)**

17          Defendant argues that Plaintiff's Title VII claim against Defendants Karen and John

18  Doe Adams must be dismissed because they cannot be sued in their individual capacities

19  under Title VII. The Court agrees. The Ninth Circuit has clearly held that "individual

20  defendants cannot be held liable for damages under Title VII." *Miller v. Maxwell's Int'l*

21  *Inc.*, 991 F.2d 583, 587 (9th Cir. 1993); *see also Coffin v. Safeway, Inc.*, 323 F. Supp. 2d

22  997, 1002 (D. Ariz. 2004) (listing cases) ("Title VII only applies to employers, not

23  employees. . . . Additionally, an employee that is a supervisor cannot be held liable under

24  Title VII.") Plaintiff does not dispute this legal authority. Rather, Plaintiff cites to

25  principles of *respondeat superior*, contending that Defendant Adams was acting *outside*

26  the scope of her work duties when she "reviewed Plaintiff's employee file to glean his

27  contact information, made the individual decision to drive to Plaintiff's home outside of

28  her work hours, and show up uninvited and unannounced at his home to harass him." (Doc.

9

8 at 16). Under the theory of *respondeat superior*, of course, an employer may be held vicariously liable for the wrongful acts of its employee if such acts occurred within the scope of employment. Thus, Plaintiff's assertion that Defendant Adams was acting *outside* the scope of her employment would mean that *respondeat superior* could *not* apply to impose vicarious liability on Defendant J.B. Hunt. It is not entirely clear why Plaintiff raises the doctrine only to argue that it does not apply.

Plaintiff concludes by arguing that Defendant Adams' "behavior rose to the level of harassment and should this Court find that the doctrine of [*r*]*espondeat* [*s*]*uperior* appl[ies] and that J.B. Hunt is *not* liable for Ms. Adams' individual actions, she should be held separately liable for the harassment of Plaintiff." (*Id.* at 16–17 (emphasis in original)). It is not this Court's job, however, to craft a viable claim against Defendant Adams on Plaintiff's behalf. In ruling on Defendants' Motion to Dismiss, the Court's role is only to determine whether Plaintiff has sufficiently stated a claim to relief that is plausible on its face. Here, Plaintiff asserts a Title VII harassment claim against Defendant Adams. The Court finds that Plaintiff has failed to sufficiently state that claim because an individual cannot be sued in their individual capacity under Title VII. The claim is dismissed with prejudice, and this Court's inquiry need go no further.

### C. Title VII Hostile Work Environment Against J.B. Hunt (Count III)

As discussed above, Plaintiff's Title VII race discrimination claim is based on *discrete* acts of discrimination or retaliation that occurred as early as August 2019 and as late as December 2021. Also as discussed, the law is clear that only those discrete acts which occurred within the statutory time period—that is, within 300 days prior to Plaintiff's April 25, 2022 filing of the Charge with the EEOC—are actionable under Title VII. Conversely, with respect to Plaintiff's Title VII hostile work environment claim, the administrative exhaustion requirement—and its 300-day time limit—is less of a concern. The Supreme Court has held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that

hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105.

Here, the only acts alleged to have taken place within the statutory time period are the performance write-ups sent to Plaintiff in November and December 2021 and Defendant's termination on December 17, 2021. As discussed above, Plaintiff's Complaint does not allege either of these two performance write-ups; it only alleges Defendant's termination. Thus, the question for purposes of administrative exhaustion is whether Defendant's termination is an act which "contribut[ed]" to the hostile environment alleged by Plaintiff. If so, then Plaintiff's hostile work environment claim is timely despite its reliance on acts alleged *outside* the statutory time period. If not—that is, if Defendant's termination was a separate act *unrelated* to the hostile work environment he alleges—then Plaintiff's hostile work environment claim fails because Plaintiff would not have alleged any act that both took place during the statutory time period *and* contributed to the hostile work environment. The Court finds that Plaintiff has sufficiently alleged that his December 2021 termination reasonably contributed to the hostile work environment he alleges. Plaintiff alleges that he was terminated because he "refused to sign" a performance write-up that was given to him on December 17, 2021. (Doc. 6-1 at 9). Plaintiff alleges that the performance write-up was the latest in a series of retaliatory write-ups that began after he was denied accommodations for his COVID recovery and after he raised concerns with J.B. Hunt's HR department. (*Id.* at 8–9). This alleged denial of accommodations, of course, relates to Plaintiff's *other* hostile work environment allegations which include his workspace being moved to the lobby, Defendants' denial of COVID-19 protective masks, and Defendant Adams' repeated harassment and general mistreatment of Plaintiff that traces back to the promotion she received over him. (*Id.* at 5–8). The Court finds that Plaintiff has sufficiently alleged that the termination was an act which "contribut[ed] to" to hostile work environment claim alleged and that Plaintiff's reliance on other acts outside the statutory time period does not necessarily preclude him from bringing the claim.

"To state a claim for hostile work environment, a plaintiff must allege that (1) he was subjected to unwelcome verbal or physical conduct because of his race, and (2) that

1    the conduct was sufficiently severe or pervasive to alter the conditions of his employment

2    and create an abusive work environment." *Pringle*, 478 F. Supp. 3d at 912 (citing *Manatt*

3    *v. Bank of Am.*, 339 F.3d 792, 798 (9th Cir. 2003); *Vasquez*, 349 F.3d at 642). Defendants

4    argue that Plaintiff's hostile work environment allegations are comprised of only content-

5    neutral conduct that had nothing to do with race and that such allegations fall short of

6    demonstrating "severe or pervasive" conduct. (Doc. 7 at 10–12).

7          "To determine whether conduct was sufficiently severe or pervasive to violate Title

8    VII, courts look at the totality of the circumstances." *Pringle*, 478 F. Supp. 3d at 912 (citing

9    *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "Occasional or isolated incidents are

10   not actionable; rather, a plaintiff must show a concerted pattern of harassment of a repeated,

11   routine, or generalized nature." *Id.* (citations omitted). Courts must consider factors such

12   as "the frequency of the discriminatory conduct; its severity; whether it is physically

13   threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

14   interferes with an employee's work performance." *Harris*, 510 U.S. at 23..

15         Plaintiff's Complaint has many allegations that show a pattern of conduct by

16   Defendants that may have altered the conditions of Plaintiff's employment or created a

17   difficult work environment. However, the Complaint explicitly ties only *four* of those

18   allegations to race. First, Plaintiff alleges that at the August 2019 corporate training event

19   he was reprimanded for asking a question and singled out for not "knowing his audience."

20   Plaintiff alleges that this comment inferred that he should "know his place" in a room where

21   he was Hispanic and his upper-management "audience" was white. (Doc. 6-1 at 16).

22   Second, on September 18, 2020—over a year later—Defendant Adams mocked Plaintiff

23   when she asked Plaintiff why he felt he was not chosen for the role she was promoted to

24   and then stated, "You need to know your audience," apparently repeating the comment

25   upper-management used over a year prior. (*Id.* at 5). Again, Plaintiff alleges this comment

26   was interpreted as "he should have known as a Hispanic not to speak out of turn in a 'white'

27   audience." (*Id.*). Third, on September 23, 2020, Defendant Adams "yelled at Plaintiff in

28   front of his entire office" in order to "subject Plaintiff to another round of public

embarrassment and harassment which Plaintiff believes was intended to make it appear as though the only Hispanic in the office was incapable of doing good work." (*Id.* at 6). Finally, Plaintiff alleges he was passed over for a promotion in favor of Defendant Adams, who was a white woman with less experience at the company. (*Id.* at 5).

The Court notes that the first three of these allegations are not, on their face, racially discriminatory or even related to race at all; Plaintiff offers only his own assumptions to demonstrate their racially discriminatory nature. The fourth relates to race, but Plaintiff alleges no facts—other than his own conclusory assumption—demonstrating that race was a factor in the company's decision to promote Defendant Adams instead of him. Moreover, Plaintiff's *other* allegations—that Defendant Adams harassed him at his own home, that his desk and workspace were moved to the middle of the lobby, that Defendants refused to allow him work-from-home accommodations during his COVID-19 recovery, that Defendants began issuing performance write-ups to Plaintiff, or even that Plaintiff was terminated for refusing to sign the December 17, 2021 write-up—have nothing to do with race and Plaintiff fails to make even a conclusory assertion to the contrary.

In sum, the Court finds that Plaintiff has failed to plead facts that, taken as true, would be sufficient to state a claim for hostile work environment because Plaintiff has not offered any factual allegation that race was the motivating factor behind the conduct Plaintiff alleges. Rather, Plaintiff only offers his own conclusory assertion that race played a factor in how he was treated on four specific occasions. The *rest* of Plaintiff's allegations of unlawful conduct—such as Defendant Adams' harassing visit to his home, Defendants' treatment of Plaintiff during the COVID-19 pandemic, etc.—apparently had *nothing* to do with race, as evidenced by the fact that Plaintiff failed to even do the bare minimum of conclusorily asserting as such. The Court dismisses Plaintiff's Title VII hostile work environment claim without prejudice and grants leave to amend.

**D.  ADA Claim Against J.B. Hunt (Count IV)**

Defendants argue that Plaintiff's ADA claim against J.B. Hunt should be dismissed because Plaintiff failed to allege disability discrimination in the Charge with the EEOC.

1    Even if Plaintiff *did* make such an allegation in the Charge, Defendants argue that any

2    ADA claim is time-barred based on the dates alleged in the Complaint. Finally, even if

3    Plaintiff *did* allege actionable, non-time-barred disability discrimination in the Charge,

4    Defendants argue that Plaintiff's Complaint fails to sufficiently allege facts to support an

5    ADA claim and that dismissal is warranted.

6          Plaintiff did not meaningfully respond to Defendants' arguments. In fact, Plaintiff

7    did not address his ADA claim in his Response brief at all. The Court therefore has

8    discretion to deem Plaintiff's failure to respond as consent to Defendants' argument. *See*

9    LRCiv. 7.2(i). Even if the Court were to consider Defendants' arguments, however, the

10   Court finds that dismissal would be appropriate. Plaintiff's ADA claim is based on

11   Plaintiff's allegation that Defendants moved his workspace out into the lobby, restricted

12   his access to preventative masks, failed to provide him with work-from-home

13   accommodations or otherwise "work with [him] on a workable resolution" while he was

14   recovering from COVID-19, and that he was forced to expend over 56 hours of PTO. (Doc.

15   6-1 at 17–20). Setting aside whether these allegations would even be sufficient to state an

16   ADA claim, Plaintiff's Complaint and Charge indicate that these alleged violations

17   occurred in November and December 2020. Based on those dates, Plaintiff was required to

18   file the Charge with the EEOC by no later than October 2021. *See supra* pt. III, sec. (A)

19   (discussing procedural requirements of Title VII and ADA claims). Plaintiff did not file

20   the Charge until April 25, 2022—approximately six months too late. This, at the least,

21   necessitates dismissal of Plaintiff's ADA claim with prejudice.

22   **IV.    CONCLUSION**

23         For the reasons stated above, the Court finds that Plaintiff's ADA claim against

24   Defendant J.B. Hunt and Title VII harassment claim against Defendants Karen and John

25   Doe Adams are dismissed with prejudice and without leave to amend. Plaintiff's Title VII

26   claims for race discrimination and hostile work environment, against Defendant J.B. Hunt,

27   are dismissed without prejudice and with leave to amend.

28   ///

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 7) is **granted**. Plaintiff's ADA claim against Defendant J.B. Hunt (Count 4) and his Title VII harassment claim against Defendants Karen and John Doe Adams (Count 2) are **dismissed *with* prejudice**. Plaintiff's Title VII claims for race discrimination (Count 1) and hostile work environment (Count 3) against Defendant J.B. Hunt are **dismissed *without* prejudice** and Plaintiff is granted **leave to amend** with respect to those claims only.

**IT IS FURTHER ORDERED** that, if Plaintiff chooses to do so, he shall file a *Second* Amended Complaint by **no later than February 20, 2023**. Plaintiff is advised that his claims will be dismissed with prejudice if the Second Amended Complaint fails to address the deficiencies pointed out by this Order.

**IT IS FURTHER ORDERED** that, if Plaintiff elects *not* to file a Second Amended Complaint by **February 20, 2023**, the Clerk of Court shall enter judgment dismissing this action without further order of this Court.

Dated this 6th day of February, 2023.

Honorable Steven P. Logan
United States District Judge